**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TUYO HOLDINGS, LLC, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  SA-24-CA-01407-XR |
| | § | |
| MASSACHUSETTS   MUTUAL   LIFE | § | |
| INSURANCE COMPANY, | § | |
| *Defendant* | § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On this date, the Court considered the parties' cross-motions for summary judgment (ECF Nos. 17 & 19) and the associated responses and replies (ECF Nos. 21–25). After careful consideration, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 19) is **DENIED**.

## BACKGROUND

This is a contract dispute. Defendant issued a universal life insurance policy ("the Policy") to Plaintiff's predecessor in interest. ECF No. 19 at 2. The dispute is whether Defendant terminated the Policy in violation of its terms.

### I. Policy Issuance and Terms

Defendant issued the Policy to Herbert Smith in 1996. *Id.* Under its terms, the policyholder paid regular premiums to build the Policy's Fund Value. Defendant, as issuer, made monthly deductions from the Fund Value to cover the cost of insurance and administrative expenses. ECF No. 17 at 8.

#### A. Grace Period Provision

The Policy terms described the consequences if the policyholder failed to pay the required premiums. Specifically, the Policy stated that it would terminate if "the required premium is not

1

paid as described in the Grace Period provision." ECF No. 17 at 8. The Grace Period provision allowed the policyholder to maintain the Policy by making a minimum payment during the Grace Period. *Id.* at 9–10. The provision defining the Grace Period states in full:

**If on any Monthly Anniversary, the Debt is greater than the Surrender Value,[1] then this Policy will enter the Grace Period. If on any Monthly Anniversary, the Debt is less than or equal to the Surrender Value, then this Policy will not enter the Grace Period if any of the following conditions 1-4 are true:**

> **1. the Surrender Value is greater than zero.**
>
> **2.** [A second condition that is inapplicable here; *see* ECF No. 19 at 3].
>
> **3.** [A third inapplicable condition].
>
> **4.** [A fourth inapplicable condition].

**If the Surrender Value is less than or equal to zero and none of the above conditions apply, then the Policy will enter the Grace Period.**

ECF No. 19-1 at 15–16; ECF No. 17 at 9–10.

Put simply, the Grace Period could be triggered in two ways:

> (1) Debt was greater than Surrender Value; or
>
> (2) Surrender Value was less than or equal to zero.

The parties agree that there was neither debt nor surrender charges on the Policy. ECF No. 19 at 3. So the first Grace Period trigger did not apply, and the second trigger can be restated as:

> *The Policy would enter the Grace Period if the Fund Value was negative.*[2]

---

[1] Surrender value refers to "[t]he amount of money payable when an insurance policy having cash value, such as a whole-life policy, is redeemed before maturity or death." *VALUE*, BLACK'S LAW DICTIONARY (12th ed. 2024). Put simply, the Surrender Value is the portion of the policy's Cash Value (or Fund Value) that the policyholder can redeem prior to maturity (i.e., death). *See generally* Riley Adams, *Cash Surrender Value of Life Insurance*, PRUDENTIAL, https://www.prudential.com/financial-education/what-is-cash-surrender-value ("When you cash out, you 'surrender' the policy or annuity, which could result in surrender charges. The remaining balance—cash value minus surrender charges—is your 'cash surrender value.'"). It can be simply thought of as Fund Value less surrender charges.

[2] *See id.* The parties dispute when the Fund Value could be calculated for the purposes of this test. Plaintiff argues that the Policy restricts the calculation to a Monthly Anniversary, so the Policy cannot enter a Grace Period on any other date. Defendant instead contends that the Policy will enter a Grace Period if, at any point, the Fund Value is negative.

This requirement of a positive Fund Value meant that "there had to be sufficient funds in the Fund Value on the Monthly Anniversary, which was the first of each month, to cover the Monthly Deductions" for cost of insurance and administrative fees. ECF No. 19 at 17. If there were not, the Policy would enter the Grace Period.

**B. Termination Terms**

If the policyholder failed to cure during a Grace Period, the Policy would terminate. The Policy stated in full:

> **If this Policy enters the Grace Period on any Monthly Anniversary, a premium sufficient to satisfy any one of conditions #1 through #4 described above will be due 31 days after such Monthly Anniversary. During this 31 day period, the Policy will stay In Force. Notice of the required premium will be mailed to You and, if You have so requested, to any assignee of record, at Your last known address(es).**
>
> **If the required premium is not paid by the due date, this Policy will terminate without value on the later of:**
>
> > **1. 31 days after the written notice is mailed; or**
> >
> > **2. 31 days after the required premium's due date.**
>
> **If the Insured dies before the termination of this Policy, any overdue Monthly Deductions will reduce the Death Benefits paid.**

ECF No. 19-1 at 15–16; ECF No. 17 at 9–10.

Put simply, the policyholder's failure to pay "the required premium . . . by the due date" would terminate the Policy "without value." Termination would occur 31 days after either "written notice" or the required premium's due date.

**II. Nonpayment, Notice, and Policy Termination**

Smith paid premiums on the Policy for several years. In 2016, he sold his rights in the Policy to Cycladic, LLC, which in turn sold the rights to Policy Services, Inc. ("PSI"). ECF No.

19 at 4; ECF No. 17 at 12. PSI continued premium payments to Defendant for four years. *See* ECF No. 17 at 12–13. In December 2020, PSI began to miss payments.

### A. December 10: Defendant Sends December Grace Notice

In December 2020, Defendant's monthly deduction drove the Fund Value below zero. ECF No. 17 at 13. On December 10, 2020, Defendant sent PSI a "Grace Notice." *Id.* It stated that the "Policy was in the Grace Period and would terminate if [Defendant] did not receive a premium payment by February 12, 2021." *Id*. PSI did not pay.

### B. January 14: Defendant Sends Courtesy Reminder

In January 2021, Defendant made another monthly deduction to the Fund Value, further decreasing its negative balance. Defendant mailed a second "Special Notice" or "Courtesy Reminder" to PSI on  January 15, 2021. ECF No. 17 at 13; ECF No. 19 at 4. This notice stated that the Policy remained in the Grace Period and a payment was due February 12. ECF No. 17 at 13; ECF No. 19 at 4–5. PSI again did not pay.

### C. February 3: PSI Makes Partial Payment

In February 2021, further monthly deductions reduced the already negative Fund Value. On February 3, Defendant received an $8,000 check from PSI. ECF No. 17 at 13–14. Defendant then noted that this payment would "pay [the] minimum on the Grace Letter" of December 10, 2020. ECF No. 19 at 5. But this payment did not cover the monthly deductions made on February 1, so the Fund Value remained negative. ECF No. 17 at 14.

### D. February 16: Defendant Sends February Grace Notice

On February 16, 2021, Defendant issued another notice because the Fund Value remained negative following the February 3 payment.[3] This notice stated that even though PSI met the

---

[3] ECF No. 17 at 14; ECF No. 19 at 5. Plaintiff's primary argument is that this notice was invalid because it relied on a calculation of the Fund Value made on a date other than a Monthly Anniversary. ECF No. 19 at 9.

conditions to exit the Grace Period noticed in the December 10 letter, the Policy had entered a new Grace Period. ECF No. 17 at 14. Defendant clearly stated, "If we do not receive a premium payment by April 19, 2021, your policy . . . will terminate." ECF No. 17 at 14.

### E. March 22: Defendant Sends Courtesy Reminder

In March 2021, further monthly deductions were made to the Fund Value. On March 22, Defendant sent a "Courtesy Reminder" or "Special Notice" reminding PSI that Defendant needed to receive the premium payment by April 19. ECF No. 19 at 6.

### F. April 19: Nonpayment and Termination

PSI did not pay by April 19. ECF No. 17 at 15; *see also* ECF No. 19 at 7; ECF No. 22 at 6.

### G. April 20: PSI Attempts Payment and Defendant Issues Refund.

On April 20, 2021, Defendant received a $9,000 check from PSI. ECF No. 17 at 16. On April 28, Defendant refunded PSI the check and notified PSI that its "insurance protection ha[d] terminated and [its] policy is no longer in force." ECF No. 19-8 at 2.

## III. Procedural History

PSI filed for Chapter 7 bankruptcy in December 2021. ECF No. 19 at 7. In March 2022, Plaintiff acquired the rights to the Policy. *Id.* This assignment gave Plaintiff "all rights, title and interest (including the right to reinstatement) that the [bankruptcy trustee] or [PSI] holds in the lapsed insurance policies." ECF No. 22 at 9. According to Plaintiff, this assignment was made with an explanation that Plaintiff "intends to seek reinstatement of the Lapsed Policies through administrative and legal processes." The bankruptcy court approved the sale agreement. ECF No. 19 at 7. Plaintiff initiated this action in December 2024 alleging that Defendant breached its contract with PSI.

**LEGAL STANDARD**

**I. Summary Judgment**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

"On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

## II. Breach of Contract

Plaintiff pursues a breach-of-contract claim. "Under Texas law, the elements of a breach of contract claim are (1) a valid contract, (2) performance, (3) breach, and (4) damages resulting from the breach." *Providence Title Co. v. Fleming*, No. 21-40578, 2023 WL 316138, at *2 (5th Cir. Jan. 19, 2023). "A written instrument that can be given a certain or definite legal meaning or interpretation is not ambiguous and will therefore be construed as matter of law." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019).

## DISCUSSION

### I. Plaintiff Has Standing

The Court first addresses standing. Standing requires injury, causation, and redressability. *Cole v. GMC*, 484 F.3d 717, 721 (5th Cir. 2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Here, PSI assigned Plaintiff all rights that it then held in the Policy. ECF No. 17 at 18. Defendant argues that PSI then held *no* rights in the Policy because the Policy had been terminated. *Id.* at 19. Because Plaintiff was not assigned any rights in the Policy, Defendant argues that Plaintiff lacks standing to sue. In other words, Defendant argues that Plaintiff lacks standing because it has a losing claim, so it cannot show an injury traceable to Defendant.

This confuses standing with the merits. "Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered." *Cole*, 484 F.3d at 723. PSI had a right to sue Defendant for breach of contract regardless of that claim's merits. PSI assigned "all rights" to Plaintiff. ECF No. 22. "The assignability of a cause of action is generally freely permitted . . . ." *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010). "[A]n assignee under Texas common law stands in the shoes of his assignor." *Id.* at 920. Plaintiff has standing.

### II. Plaintiff Fails to Raise a Genuine Dispute of Material Fact on the Merits

The merits dispute is whether Defendant breached the terms of the Policy. Defendant argues that it properly terminated the Policy because the Policy lapsed when PSI failed to pay by April 19. Plaintiff's position is that the Policy did not lapse on April 19, so Defendant breached by refusing PSI's tender on April 20.

**A. Plaintiff Argues that Termination Was Premature**

Plaintiff's argument starts from the premise that the Grace Period "can only be triggered on a Monthly Anniversary." ECF No. 22 at 8. By Plaintiff's reasoning, PSI's February 3 payment cured the Grace Period noticed on December 10. *Id*. at 9. Once this Grace Period was cured, "[a]ny new grace event could only arise on the next Monthly Anniversary which is March 1, 2021." *Id.* So according to Plaintiff, Defendant's February 16 Grace Notice was premature and invalid.

Because the February Grace Notice was invalid, Plaintiff contends that Defendant's March 22 Courtesy Reminder was the first notice to PSI that it had entered a Grace Period. Thus, an April 19 termination date was "impermissibly early" because it was less than 31 days after PSI received "written notice." ECF No. 22 at 10.

Plaintiff's argument uses this timeline:

> **December 10:** Defendant notifies PSI that it entered a Grace Period.
>
> **February 3:** PSI pays the minimum on the December Grace Notice to remove the Policy from a Grace Period
>
> **February 16:** Defendant issues a Grace Notice that is invalid because it relies on a calculation of the Fund Value made after the February 3 payment and on a date other than a Monthly Anniversary.
>
> **March 22**: Defendant issues a Courtesy Reminder stating that the Policy remained in a Grace Period. This is the first valid Grace Notice because it relies on a calculation made after the February 3 payment and on the next Monthly Anniversary (March 1).
>
> **April 19:** Defendant terminates the Policy. This termination is premature because termination can only occur 31 days after either "written notice" or the required premium's due date. *Id.* "The earliest permissible termination date is . . . no earlier than April 23, 2021"—31 days after the March 22 Courtesy Reminder. *See* ECF No. 22 at 10.

**B. Even If a Grace Period Could Only Begin on a Monthly Anniversary, Defendant Still Did Not Breach by Refusing Tender**

At the outset, it is worth noting that Plaintiff's premise may be flawed. Plaintiff summarily states that the Grace Period "can only be triggered on a Monthly Anniversary." ECF No. 22 at 8. The Policy's language does not clearly support this proposition. It states: "If the Surrender Value is less than or equal to zero and none of the [several enumerated] conditions apply, then the Policy will enter the Grace Period." ECF No. 19-1 at 15–16; ECF No. 17 at 9–10. This language alone does not restrict a Grace Period determination to a Monthly Anniversary. So Plaintiff asks the Court to read "on a Monthly Anniversary" into the language based on "the context and surrounding provisions." ECF No. 24 at 7. *But see Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008) ("We must give the policy's words their plain meaning, without inserting additional provisions into the contract.").

But even if a Grace Period could only begin on a Monthly Anniversary, PSI's payment was still late. The Fund Value remained negative after PSI's February 3 payment. ECF No. 17 at 14; *see also* ECF No. 19 at 9 (arguing only that PSI's February 3 payment was sufficient to take the Policy out of the Grace Period until March 1). The Policy therefore entered a Grace Period no later than March 1. PSI's obligations at that point were clear:

> **If this Policy enters the Grace Period on any Monthly Anniversary, a premium sufficient to satisfy any one of conditions #1 through #4 described above will be due 31 days after such Monthly Anniversary.**

ECF No. 19-1 at 15–16.

31 days after March 1 was April 1. PSI did not tender any payment until April 20. So even if a Grace Period could only begin on a Monthly Anniversary, PSI's payment was still untimely.

PSI's untimely payment triggered Policy termination. The termination provision is clear on this point. It states:

10

**If the required premium is not paid by the due date, this Policy will terminate without value on the later of:**

    **1. 31 days after the written notice is mailed; or**

    **2. 31 days after the required premium's due date.**

ECF No. 19-1 at 16. The only condition triggering termination is the policyholder's failure to pay the premium by the due date. Once the condition is met, the Policy *will* terminate without value. The only uncertainty is *when*: either 31 days after written notice or 31 days after the premium's due date. So PSI's failure to pay by April 1 required termination.

The only remaining question is *when* termination should have occurred. Plaintiff complains that Defendant's April 19 termination was premature. This could be true if the Grace Period began on March 1 and payment was due April 1. 31 days later would have been May 2. But ultimately this question is immaterial.

Even if Defendant should have calculated the termination date as May 2, Plaintiff shows no prejudice from the error. Plaintiff alleges that Defendant breached by refusing PSI's tender on April 20. ECF No. 19 at 9. The Grace Provision does not require Defendant to accept payment after the due date but before the termination date. Plaintiff points to no other Policy language imposing such an obligation. Nor does Plaintiff provide other evidence of injury due to an early termination date, such as a denied death-benefit claim.

In sum, no reasonable juror could conclude that Defendant breached the Policy in a manner that caused damages even if the Policy's Grace Period provision were construed in Plaintiff's favor.

### C. The Policy Is Not Materially Ambiguous

Plaintiff next argues that the contract is ambiguous as to the termination date, so there is a fact issue whether Defendant prematurely terminated the Policy. But even assuming that the

11

required premium due date is ambiguous, any ambiguity is immaterial. The latest possible due date that Plaintiff proposes was April 19. ECF No. 22 at 15. PSI did not pay by that date. The Policy's unambiguous terms required termination.

As noted, Plaintiff fails to show injury due to a termination-date miscalculation. Plaintiff's only theory is that Defendant breached by refusing tender after it was due but before Policy termination. ECF No. 19 at 9–10. So even if the Policy contained Plaintiff's claimed ambiguity and that ambiguity was construed in Plaintiff's favor, no reasonable juror could find that Defendant breached the Policy in a manner that caused damages.

### D. Plaintiff Fails to Raise a Fact Issue Regarding Payment Amounts

Plaintiff finally argues that there is a fact issue whether Defendant properly calculated the amounts on the Grace Notices. But Plaintiff fails to raise a genuine dispute on this issue.

Plaintiff generally complains that Defendant used "computer models" to generate its payment amounts, and that the amounts had a "lack of verification." ECF No. 22 at 17. But the only evidence that Plaintiff provides to put those amounts in doubt fails to do so. Plaintiff states that the "fallibility of the 'system' was conceded when [Defendant's employee] acknowledged the system makes grace period calculations on non-monthly anniversaries." ECF No. 22 at 17. But as discussed, the Policy does not clearly prohibit such calculations. Plaintiff also complains that the "fallibility of the system is further eviden[ced]" by its miscalculation of an amount on a Grace Notice issued in November 2020. *Id.* That notice is not at issue in this case. For those notices that are at issue, Plaintiff fails to bring any evidence to show that they contained errors. And even if they did, such as by overstating the amount owed, PSI did not make *any* payment until April 20. Plaintiff thus fails to show that any error would be material.

Plaintiff failed to show a genuine issue of material fact based on errors in the amounts that PSI owed.

12

**III. Plaintiff's Declaratory Judgment Fails with His Contractual Claim**

Plaintiff also seeks a declaratory judgment that (1) the Policy could not terminate before April 23, 2021, (2) Defendant's termination was wrongful, and (3) Plaintiff has the right to bring the Policy current under its terms. ECF No. 19 at 11. This declaratory judgment claim mirrors Plaintiff's contract claim. Plaintiff failed to show a genuine issue of material fact on that claim. Its declaratory judgment claim must also be denied.

CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's request for fees as the prevailing party is denied accordingly. *See also Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[A] party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law."). A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this May 4, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

13